IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

EUGENIE HENNING,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　No. 1:21-cv-01040-JDB-jay

CITY OF JACKSON, TENNESSEE,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND
DISMISSING CASE
_____

*INTRODUCTION AND PROCEDURAL BACKGROUND*

On March 11, 2021, the Plaintiff, Eugenie Henning, brought this action against the Defendant, City of Jackson, Tennessee (the "City"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981, alleging discrimination on the basis of race and retaliation. (Docket Entry ("D.E.") 1.) Pending on the Court's docket is the City's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (D.E. 24), to which Plaintiff responded (D.E. 32), and Defendant replied (D.E. 33).[1]  As the motion has been fully briefed, it is ripe for disposition.

*STANDARD OF REVIEW*

Rule 56 provides in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] To aid the Court in its review of Defendant's submissions, counsel is instructed, in future filings, to include when docketing exhibits a brief description of the exhibit's contents, for example, "Exhibit A – Deposition of Eugenie Henning."

judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, a plaintiff "can no longer rest on allegations alone[.]" *Reform Am. v. City of Detroit, Mich.*, 37 F.4th 1138, 1148 (6th Cir. 2022) (internal quotation marks omitted), *reh'g en banc denied*, 2022 WL 2914586 (6th Cir. July 18, 2022). Rather, upon the filing of a proper motion for summary judgment, the nonmoving party "must present significant probative evidence that will reveal that there is more than some metaphysical doubt as to material facts." *Wiley v. City of Columbus, Ohio*, 36 F.4th 661, 667 (6th Cir. 2022) (internal quotation marks omitted). "A dispute is 'genuine' only if a reasonable jury could decide it either way, and it is 'material' only if its resolution could affect the case's outcome." *Reform Am.*, 37 F.4th at 1147. In making its determination, the court is to "view the factual evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor." *Stein v. Gunkel*, ___ F.4th ___, 2022 WL 3210205, at *4 (6th Cir. Aug. 9, 2022) (quoting *Burwell v. City of Lansing*, 7 F.4th 456, 462 (6th Cir. 2021)). "The moving party is entitled to summary judgment when the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 954 F.3d 852, 859 (6th Cir. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (internal quotation marks omitted), *reh'g en banc denied* (July 1, 2020).

*UNDISPUTED MATERIAL FACTS*

The following material facts are undisputed. Defendant hired Henning, who is black, on February 5, 2011, as a senior secretary in its groundskeeping department. She was later promoted to the position of administrative specialist in the same department. On or about June 9, 2017, Plaintiff filed an EEOC charge against the Defendant. At the time the charge was filed, her supervisor was Willie Woods, Lynn Henning was the City's HR Director, and the position of City

Mayor was held by Jerry Gist. The charge, of which Lynn Henning was aware, concluded without any recovery of damages.

After Plaintiff filed the EEOC charge, she continued to work for the Defendant and received cost of living raises. In the summer of 2019, Scott Conger replaced Gist as City Mayor and hired Alex Reed as his chief of staff. Around December of that year, Henning approached Reed and informed him that she was unhappy in the groundskeeping department and that she would like a different job. At approximately the same time, Rena Tyler, then an employee of the City's health and sanitation department, advised Reed that she too was unhappy in her position. Reed proposed that Henning and Tyler, who is white, switch jobs, to which both women agreed. As a result, Plaintiff began working in the health and sanitation department under her new supervisor, Kathleen Honeycutt.

In March 2020, the City entered a state of emergency in light of the COVID-19 pandemic. Around that time, Defendant determined that an expected revenue shortfall might lead to an inability to pay salaries and wages.

On April 5, 2020, Henning sent an email to Honeycutt that stated in its entirety as follows:

> I've address many concerns that I have to you in the last several months since I've been in this department, yet again, after I was given the information that you shared with me Friday morning I was baffled. I pondered on the information as to why would Cynthia [Walker] move from the office that she has been in since she began in the department. She is your assistant; therefore, I would think that she should be the person nearest to you. You stated last month that Mayor Conger wanted Cynthia to be responsible for all of the billing, and the receipt of payments, which include the receipt of payments that is mailed in, and payments made in person by customers. You stated that he told you that one person should be responsible for the receipt book, and that person is Cynthia. I asked you Friday about the fact that she is the responsible person, you indicated that I can receipt payments; in which, in contradictory. Now, suddenly that has change once again. I feel that I am not being treated fairly. As I have mentioned before to you, that I would like to be a part of the team, not isolated where I am not given any information, but overhear and notice the whispering that indicates there is talk pertaining to me. I am never asked what I prefer, if I have a choice, what part would I like to play in assisting in

3

> the office work, nor what I think of a matter. I am told what my responsibilities are in the office, or how it will change after Cynthia has chosen the office responsibilities that she prefer, as you indicated before to me. I asked for on hand training from Rena at the GroundsKeeping location, but I was told that she would have to come over to the H & S Dept., yet Cynthia was given the opportunity to go to Rena's location for training over a period of days. I asked for overtime to learn the job, and to get ahead. I wasn't given that opportunity, yet Cynthia was/is given that opportunity once again. When I was transferred from GroundsKeeping to H & S, I was told that I was going to take Rena's position, but I wasn't truly given that opportunity, no on hand training and no increase in pay. I feel that I am being set up to fail, or not to succeed. I haven't really been given the clear understanding as to what me position really consist of, even though I've asked numerous time.
>
> I made the decision to transfer to the H & S Dept. from GroundsKeeping, based on my thought that I would be treated fairly, respected, and given an opportunity of equality. I do feel that I am being discipline, for what reason I am unsure. I have been place in a situation to feel that I am being discriminated. I put my heart and soul into my job, so that I can make a difference to helping the department to advance. I am aware that this is a learning process, but I haven't been given the opportunity to prove that I am a team player. I am easy to get along with, and respectful of other people feelings.
>
> The choices shouldn't be given to one person, and that person shouldn't be given the rights to continuously slander, belittle, or degrade other people, based on what he or she wants. If the issue at hand would be addressed, instead of looking at certain workers for speaking up as troublemakers, this world and that which is in it, would be a better place to live, work, and dwell.
>
> If you feel that I am not the right person to work in your department, please inform the Mayor; with due respect, the true reason for your decision. I have put every effort into making this transition transpire that would be beneficial to the City of Jackson, H & S Dept., and as well as myself. Value me as a person first, then as an employee who does want to have true equality.

(D.E. 24-3 at PageID 224-25.) The email was forwarded by Reed to Lynn Henning, who responded to the email on April 7, 2020:

> In my role as the Director of Human Resources for the City of Jackson, I am the investigator of complaints brought against employees of the City with regards to Title VII violations, namely discriminatory practices, acts and/or conditions relative to race, gender, religion, disability, age, etc.
>
> Additionally, each year during the month of October, as Title VI Coordinator, I make all employees and citizens aware of our commitment to non-discrimination in our programs, services, etc. While employees do not fall specifically under this

4

title, the intent is to bring awareness to any practices, acts or the like that may be discriminatory in nature.

With that being said, I have a copy of the letter that you sent to Kathleen Huneycutt on April 6, 2020, where you allege unfair treatment, among other issues. I am opening an investigation as per policy and will report my findings to Mayor Scott Conger. I will need your cooperation in providing as much detail as possible relative to when incidents occurred, where they occurred and witness(es) to any incidents.

1. You said that you are not being treated fairly.

    a. Describe the incident or incidents that occurred to indicate that you are being treated unfairly.

    b. When did she commit the act(s)?

    c. What did she do?

    d. Who witnessed this act?

2. You said that you feel that you are being set up to fail.

    a. Describe how you are being set up to fail.

    b. What did she do?

    c. When did she do it?

    d. Who witnessed this act?

3. You said that you feel that you are being disciplined.

    a. When did the discipline take place?

    b. What form of discipline was it?

4. You said that you are being discriminated against.

    a. Please explain.

5. You said that people have been given the rights to continuously slander, belittle or degrade.

    a. Please explain.

    b.  What was said?

    c.  Who said it?

    d.  Were there any witnesses?  If yes, who were they?

  6. You said—value me as a person first, then as an employee who does want to have true equality.

    a.  Please explain.

    b.  How are you treated ["]less than a person["]?

    c.  How are you not treated equally as other employees?

Again, as I will conduct a full investigation into these accusations, the more details and information that you can provide will be helpful.

(D.E. 32-3 at PageID 402-03.)

Around April 24, 2020, Defendant furloughed some 200 of its 790 employees. Plaintiff was among those employees affected. Later, when movant began preparing its upcoming fiscal budget and projections indicated an anticipated $2 million budget deficit, the City, on June 23, 2020, terminated twenty-two employees as part of a reduction in force ("RIF") in an attempt to reduce the deficit. Of that number, eleven were white and eleven were black. Plaintiff was one of those fired. It was the City's department heads who made recommendations as to which employees should be selected for RIF furlough and termination. Lynn Henning was still the HR Director at the time of the RIF.

*ARGUMENTS OF THE PARTIES AND ANALYSIS*

<u>SECTION 1981.</u>

Although Plaintiff seeks redress pursuant to § 1981, the statute does not create an independent cause of action against a municipality. *See Arendale v. City of Memphis*, 519 F.3d 587, 598-99 (6th Cir. 2008); *see also Johnson v. Louisville-Jefferson Cty. Metro. Gov't*, Civil

Action No. 3:19-CV-00431-GNS-CHL, 2020 WL 6386395, at *4 (W.D. Ky. Oct. 30, 2020); *Marshall v. Wayne Cty.*, Case No. 2:19-cv-12515, 2020 WL 5505382, at *3 (E.D. Mich. Sept. 11, 2020). Accordingly, her § 1981 claims cannot stand.

TITLE VII.

*Racial Discrimination*

Title VII prohibits "discriminat[ion] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Where, as is the case here, a plaintiff lacks direct evidence of discrimination, the court is to apply the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 522 (6th Cir. 2021).

Generally, the framework consists of three steps. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 507-08 (6th Cir. 2021). A plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing that (1) "he or she was a member of a protected class"; (2) "he or she suffered an adverse employment action"; (3) "he or she was qualified for the position"; and (4) "he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Id.* at 508. If the plaintiff fails at this stage, defendant is entitled to summary judgment on the claim. *Equal Emp't Opportunity Comm'n v. Clarksville Health Sys., G.P.*, ___ F. Supp. 3d ___, 2022 WL 3009502, at *6 (M.D. Tenn. July 28, 2022); *see also Briggs*, 11 F.4th at 508 ("On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry."). If the plaintiff succeeds on this showing, "[t]he burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions, supported by

admissible evidence that if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Briggs*, 11 F.4th at 508 (internal quotation marks omitted). At that point, the burden returns to the plaintiff, requiring her to prove by a preponderance of the evidence that "the employer's proffered reasons were a mere pretext for discrimination." *Id.* at 508-09.

As noted above, Plaintiff was terminated as part of a RIF. "A workforce reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Passmore v. Mapco Express, Inc.*, 447 F. Supp. 3d 654, 666 (M.D. Tenn. 2017) (quoting *Bell v. Prefix, Inc.*, 321 F. App'x 423, 428 (6th Cir. 2009)). Because of the unique nature of such circumstances, the fourth element of the prima facie case has been modified to require a heightened showing where the adverse action involved a RIF. *Thompson*, 985 F.3d at 522; *Peeples v. City of Detroit*, 891 F.3d 622, 634 (6th Cir. 2018), *reh'g denied* (July 6, 2018). Under this standard, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Peeples*, 891 F.3d at 634 (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

The instant motion focuses on the fourth element of the prima facie case, as modified for RIF actions. In making its determination as to whether this requirement has been met, courts have been instructed that "[t]he guiding principle is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of" race. *Barnes*, 896 F.2d at 1466; *see also Pio v. Benteler Auto. Corp.*, Case No. 1:18-cv-1265, 2021 WL 5925363, at *9 (W.D. Mich. Feb. 23, 2021), *aff'd*, 2022 WL 351772 (6th Cir. Feb. 7, 2022).

Plaintiff argues that, in March 2020, Honeycutt gave some of her job duties to Cynthia Walker, who is white.  She claims that Walker was also given training denied to Henning, a raise, and permission to work overtime.  Plaintiff further submits that, after she was furloughed in April 2020, an unidentified white employee who had worked in the City's police department was also furloughed but recalled to work in the health and sanitation department instead of Henning and apparently not terminated.  However, "evidence that one competent employee was retained over another is not sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of her race in the RIF context."  *Thompson*, 985 F.3d at 528 (brackets and internal quotation marks omitted).  Such evidence may be enough to clear the bar upon a showing that the plaintiff was more qualified than the nonprotected individual or that the employer "made statements indicative of a [racially] discriminatory motive," *see id.* at 527, but neither has been made, or claimed, here.  Accordingly, the fact that Walker or the unidentified employee was retained fails to establish a disputed fact regarding whether Henning was singled out because of her race.  *See id.* at 528 ("Thompson does not claim that her qualifications were superior to [a nonprotected retained employee's], nor does she present other evidence of discriminatory motive related to [a protected class].  Thus, the fact that [the nonprotected employee] was retained does not establish a dispute of fact regarding whether Thompson was singled out because of her [protected status].").

Absent an essential element of her racial discrimination claim, the prima facie case has not been shown and the claim must fail.

*Retaliation*

Plaintiff alleged in her complaint that the City retaliated against her "because of her prior protests of employment discrimination" (D.E. 1 at PageID 5), specifically, the 2017 EEOC charge and the April 5, 2020, email.  Title VII prohibits an employer from retaliating against an employee because he or she "has opposed any practice made an unlawful employment practice" or "has made a charge, testified, assisted, or  participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a).  Because Henning again relies upon circumstantial evidence of retaliation, the same burden-shifting analysis articulated in *McDonnell Douglas* applies.  *See Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 605 (6th Cir. 2022), *reh'g denied*, 2022 WL 2286411 (6th Cir. May 31, 2022).  To state a prima facie case of retaliation, the plaintiff must establish that (1) she "engaged in protected activity," (2) "defendant[] knew [she] exercised [her] protected right," (3) "defendant[] subsequently took an adverse employment action against [her]," and (4) "[her] protected activity was the but-for cause of the adverse employment action." *Id.* (internal quotation marks omitted).  While the *McDonnell Douglas* analysis is one of shifting burdens, the ultimate burden "remains with the plaintiff to convince the factfinder that the defendant retaliated against her for engaging in protected activity." *Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021).

2017 EEOC Charge.

In its motion, the City maintains that Plaintiff cannot establish a causal connection between the charge and her termination—the fourth element of the retaliation claim.  To show causation, "a plaintiff must produce sufficient evidence from which an inference can be drawn that the defendant took the adverse employment action because the plaintiff engaged in protected activity." *Bledsoe v. Tenn. Valley Auth. Bd. of Dir.*, 42 F.4th 568, 2022 WL 2965630, at *13 (6th Cir. July

27, 2022) (quoting *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004)) (brackets and internal quotation marks omitted). "A plaintiff who shows that the adverse action occurred immediately after the protected activity may be able to rely on temporal proximity alone to overcome a motion for summary judgment." *Id.* However, when "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action," causation can be shown if temporal proximity is coupled with "other evidence of retaliatory conduct to establish causality." *Id.* (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

It appears from her brief that the only other evidence of retaliatory conduct offered by Plaintiff consists of the fact that Lynn Henning was the HR Director at both the time of the EEOC charge and of her termination. However, it is undisputed that the department heads—in Plaintiff's case, Honeycutt—recommended which employees in their departments should be selected for furlough and termination during the RIF, not the HR Director. No evidence has been presented that Honeycutt had any knowledge of the 2017 EEOC claim. Therefore, the retaliation claim based on the 2017 EEOC charge lacks an essential element of the prima facie claim and must fail.

<u>April 5, 2020, Email.</u>

Defendant also maintains that Henning's April 5, 2020, email cannot form the basis of a retaliation claim because it does not constitute "protected activity" for purposes of establishing a prima facie case. To make this showing, a plaintiff must demonstrate that she "took an overt stand against suspected illegal discriminatory action." *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 489 (6th Cir. 2020) (internal quotation marks omitted), *cert. denied*, 141 S. Ct. 1743 (2021). A vague charge of discrimination in an internal letter or memorandum is insufficient. *Id.* at 489-90*; see*

11

*also Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989). As the Sixth Circuit explained in *Booker*,

> [o]therwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination. In our view, such would constitute an intolerable intrusion into the workplace.

*Booker*, 879 F.2d at 1313.

In support of the required showing, Plaintiff references her claim in the email that she was being denied "true equality." However, it is unclear from the context in which the term was used whether she meant equality in the sense of being a member of some protected class or whether she perceived that she was unappreciated for some nonprotected reason. In its totality, the email reads as a complaint to Honeycutt that other employees in the department did not like her, that she was not being taken seriously, and that her personal needs for advancement were not being met as quickly as she would have preferred, all of which could have arisen for any number of reasons. Indeed, Plaintiff never mentioned her race, or anyone else's, or suggested that the treatment of which she complained had anything to do with race. While she complained that Walker was shown some favoritism, she offered no indication as to what she considered to be the underlying reason for it. Viewing the proffered evidence in the light most favorable to the nonmovant, the Court finds that the vague intimations contained in the April 5, 2020, email fall short of satisfying the protected activity prong of the prima facie case. *See Khalaf*, 973 F.3d at 491 (appellate court found it questionable that employee's email to employer's HR manager constituted protected activity where it merely catalogued instances of his subordinates' disrespect, poor work, and defensiveness, none of which he explicitly connected to being motivated by any animus toward his race or national origin); *Speck v. City of Memphis*, 370 F. App'x 622, 626 (6th Cir. 2010) (where plaintiff complained of being targeted for unfair treatment, but not of being targeted

12

because of her protected status, she had failed to establish that she engaged in protected activity); *Fox v. Eagle Distrib. Co., Inc.*, 510 F.3d 587, 588-92 (6th Cir. 2007) (appellate court affirmed district court's grant of summary judgment in favor of employer where plaintiff's statements to customers that employer's "upper management [was] out to get him" and that his superiors had prevented him from being promoted, without mentioning age discrimination, did not amount to protected activity, noting that to decide otherwise would "require [the court] to go beyond drawing a reasonable inference in [plaintiff's] favor" by "reading something into the record that simply is not there"); *Grice v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 981 F. Supp. 2d 719, 737 (W.D. Tenn. 2013) (plaintiff's "general complaints of discrimination, which neither referred to a protected class nor provided facts sufficient to create that inference, are insufficient to constitute" protected activity); *Manstra v. Norfolk S. Corp.*, No 3-10-CV-166, 2012 WL 1059950, at **11-13 (E.D. Tenn. Mar. 28, 2012) (insufficient showing of protected activity where employee failed to allege that harsh and unfair treatment by her supervisors and her failure to receive opportunities equal to those of other trainees were based on her sex or any other matter made unlawful by Title VII); *Longs v. Ford Motor Co.*, 647 F. Supp. 2d 919, 932-33 (W.D. Tenn. 2009) (an employee's complaint to his or her employer "must indicate that discrimination occurred because of sex, race, national origin, or some other protected class"; "[m]erely complaining in general terms of discrimination . . ., without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient").

      Plaintiff also points to Lynn Henning's response to her email and the statement therein that she was the investigator of complaints against the City for Title VII violations of all kinds. If anything, the email, taken in its entirety, works against the Plaintiff. Although the missive advised Plaintiff that an investigation into her alleged "unfair treatment" would be opened pursuant to City

13

policy, it was clear from the questions posed in the responsive email that the HR Director could not discern from Plaintiff's communication the basis for any potential Title VII claim. It is worth noting here that Plaintiff does not argue, and the record does not reflect, that she ever complied with Lynn Henning's request for details relative to the complaints made in the April 5, 2020, email.[2] The retaliation claim based on the email fails.

## *CONCLUSION*

For the reasons articulated herein, Defendant's motion for summary judgment is GRANTED and this matter is DISMISSED. The Clerk is DIRECTED to enter judgment in favor of the Defendant and to remove all settings in the case from the Court's calendar.

IT IS SO ORDERED this 25th day of August 2022.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[2] In her second declaration, a copy of which is attached as an exhibit to the City's reply brief, Lynn Henning stated that Plaintiff never responded to her April 7, 2020, email. (D.E. 33-1 ¶ 3.)